UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
                                    )
RICHARD G. MACDONALD,               )
                                    )
                    Plaintiff,      )
                                    )
            v.                      )   CIVIL ACTION
                                    )   NO. 11-12075-WGY
OLD REPUBLIC NATIONAL               )
TITLE INSURANCE COMPANY,            )
MICHAEL GOULD, MICHAEL BURKE,       )
LAW OFFICE OF GOULD AND BURKE,      )
PLLC,                               )
                    Defendants.     )
                                    )
```

MEMORANDUM AND ORDER

YOUNG, D.J.                                          July 31, 2012

## I. Background

Richard G. MacDonald ("MacDonald") brings this action against Old Republic National Title Insurance Company ("Old Republic") and Old Republic's agents, now terminated, attorneys Michael Gould, Michael Burke, and the Law Office of Gould and Burke, PLLC (collectively, the "Law Firm"). In his complaint, MacDonald alleges breach of contract (Count I), unfair and deceptive practices in violation of Massachusetts General Laws, chapters 93A and 176D (Count II), statutory and common law professional negligence (Count III), and negligent supervision (Count IV).

Old Republic moved to dismiss Counts II, III, and IV of the complaint under Federal Rule of Civil Procedure 12(b)(6). Old Republic Nat'l Title Ins. Co.'s Mot. Dismiss Counts II-IV Compl., ECF No. 7; Mem. Supp. Mot. Old Republic Nat'l Title Ins. Co. Mot. Dismiss Counts II-IV Compl. ("Old Republic Mem."), ECF No. 8. MacDonald opposed the motion on January 9, 2012. Opp'n Def.'s Mot. Dismiss & Mot. Transfer Venue, ECF No. 12; Mem. Law Opp'n Defs.' Mot. Dismiss Mot. Transfer ("MacDonald Mem."), ECF No. 13.

A hearing was held on January 24, 2012, and this Court denied Old Republic's motion to dismiss Counts II and IV, and took Count III under advisement. The Court subsequently denied Old Republic's motion to transfer. Order, ECF No. 16.

## A. Standard of Review

Under the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A mere recital of the legal elements supported only by conclusory statements is not sufficient to state a cause of action. Id. at 555-57.

### B.    Alleged Facts

On or about July 11, 2007, MacDonald delivered $135,000 to Scott Farah ("Farah") for "unit mortgage loans" arranged by Farah or his companies, Financial Resources Mortgage, Inc. and CL and M, Inc. (collectively, "FRM/CLM").  Compl. ¶¶ 10-11, ECF No. 1-1. As security for the loan, MacDonald was granted a first mortgage purporting to encumber three condominium units of a condominium complex in Chichester, New Hampshire (the "Condominiums").  Id. ¶ 13.  To insure the validity, enforceability, and priority of the purported mortgages, MacDonald purchased and received three title insurance policies issued by Old Republic (the "Loan Policies"), through its agent, the Law Firm.  Id. ¶ 25.

In November 2009, MacDonald became aware that he had been the victim of a Ponzi Scheme perpetrated by Farah and FRM/CLM. Id. ¶ 19.  MacDonald claims that the Condominium was "fictitious" and "never existed" because the proper documentation to create a condominium had not been filed.[1]  Id. ¶¶ 20, 22.  MacDonald alleges that as the Condominiums are not legitimate, the titles are unmarketable, which is a covered risk under the policy.[2]  Id.

_____

[1] McDonald alleges that Old Republic has conceded this point in bankruptcy litigation by stating that "proper documentation to create a condominium" had not been filed.  Compl. ¶ 22.

[2] The title insurance policies each include riders that explicitly include the ALTA 4.1 Condominium endorsement.  E.g., Compl., Ex. 1, Old Republic Nat'l Title Ins. Co., Schedule B, Part I, Loan Policy 2, ECF No. 1-1.  Exhibit A to the Loan Policies describes the condominium units.  E.g., id. at 3 ("A

¶¶ 34-35.  Subsequent to discovering the unmarketable title, MacDonald demanded that Old Republic make payment under the title insurance policies.  Id. ¶ 37.  Thus far, Old Republic has refused to make payment to MacDonald on each title insurance policy.  Id. ¶ 39.

## II.  ANALYSIS

In Count III, MacDonald claims that Old Republic, through its agents, failed to conduct a competent search of title and is liable under New Hampshire Revised Statutes Section 416-A:6 (the "New Hampshire statute"), which establishes the determination of insurability required for title insurers, and is also liable under the common law for professional negligence.  Compl. ¶¶ 143-45.  Old Republic argues that MacDonald has failed to state a claim because the New Hampshire statute does not provide a private cause of action and because both negligence claims are barred by the economic loss doctrine.  Old Republic Mem. 9-12.

---

certain condominium, unit known as Unit #7 . . . .").  The ALTA 4.1 endorsement states that the insurer:

> insures against loss or damage sustained by the Insured by reason of:
>> 1. The failure of the unit identified in Schedule A and its common elements to be part of a condominium within the meaning of the condominium statutes of the jurisdiction in which the unit and its common elements are located.

E.g., ALTA 4.1 Endorsement, available at http://www.oldrepublictitle.com/orstarslink/resources/forms/ORT4338.pdf (last visited July 27, 2012).

This case presents two issues: (1) whether MacDonald has a private cause of action under the statute or the common law; and (2) whether the economic loss doctrine applies to MacDonald's negligence claim.

**A.   New Hampshire Revised Statutes Section 416-A:6**

Old Republic characterizes the issue here as whether the New Hampshire statute creates a private cause of action.   This Court agrees with the parties that there are no reported New Hampshire cases interpreting the statute or addressing whether it creates a private cause of action.   Old Republic Mem. 9; MacDonald Mem. 7. The provision in question is one section of the Title Insurance Code that regulates the title insurance industry in New Hampshire.   N.H. Rev. Stat. Ann. § 416-A:1, <u>et seq.</u>   "No company shall underwrite or issue a policy of title insurance . . . unless authorized by the provisions of [N.H. Rev. Stat. § 416-A] to transact such business."   <u>Id.</u> § 416-A:3.   Section 6 of the Title Insurance Code requires that title insurers determine insurability before providing title insurance.   <u>Id.</u> § 416-A:6.

> No policy or contract of title insurance shall be written unless and until the title insurance company has caused to be conducted a reasonable examination of the title and has caused to be made a determination of insurability of title in accordance with sound underwriting practices for title insurance companies. Evidence thereof shall be preserved and retained in the files of the title insurance company or its agent or its approved attorney for a period of not less than 20 years after the policy or contract of title insurance has been issued. . . .

_Id._ Because New Hampshire courts have yet to determine whether this provision provides a right of action, this Court looks first to the New Hampshire courts for guidance on when a cause of action may be implied.

In _Marquay_ v. _Eno_, 139 N.H. 708 (1995), the New Hampshire Supreme Court examined its jurisprudence on "the relationship between statutory duties and civil liability." _Id._ at 713-14. As the court noted, New Hampshire case law is not exactly consistent on the topic, but in general it ought to distinguish between cases with statutorily expressed or implied causes of action, and negligence _per se_. _Id._ at 713. The court admonished that the doctrine of negligence _per se_ plays no role in the creation of common law causes of action. _Id._ at 713-14. Where a cause of action exists at common law, however, the standard of conduct may be defined by a statute rather than the usual reasonable person standard. _Id._ at 714. Of course, a plaintiff may bring an action without a common law duty if the statute creates, either expressly or impliedly, a private cause of action. _Id._ This Court will first examine the New Hampshire statute for such a private remedy.

There is little doubt but that the statute provides a standard of conduct for title insurers, but its express terms do

not mention a private remedy.[3]   The Court next looks to the
statute's legislative history to determine whether the
legislature intended the statute to include a private cause of
action.   See id. at 715 (noting that "where the legislature has
intended civil liability flow from the violation of a statute, it
has often so provided").

The Court is hindered in this analysis by the sparse
legislative history available for the New Hampshire Title
Insurance Code (the "Code").   The New Hampshire Journals of the
Senate and House do provide some limited information, but none
that speaks directly to the private cause of action.   See e.g.,
N.H. Journal of the House, Session of 1971 Vol. I 479-80.
Section 416-A:6 does appear to be one of a very few sections to
the original bill code that were amended.   Id.   The New Hampshire
House amended the length of time that title insurers, their
agents, or attorneys must retain proof of their title examination
- changing the minimum time to retain proof from fifteen to
twenty years.   Id. at 480.   This amendment tells us that the
drafters considered the provision important, but not what
remedies they contemplated or intended.

---

[3] The Title Insurance Code does include a provision making
title insurers subject to all other consistent laws governing
insurance companies.   N.H. Rev. Stat. § 416-A:18(I).   This Court
is unaware of any such New Hampshire law granting a private right
of action against insurers, but if one exists, the plaintiff may
request reconsideration.

Perhaps the only evidence of the legislature's intent is the one sentence description of the bill provided as the House Committee Report. The Code "[g]ives the Insurance Commissioner power to regulate title insurance companies, who are just beginning to sell title insurance in New Hampshire." Id. at 479. This exhortation that the Commissioner shall regulate title insurers could be interpreted as implying that executive regulation precludes private remedies. Then again, perhaps not. Without more conclusive information about legislative intent, this Court hesitates to imply a cause of action in the statute. Finding no implied cause of action, the Court turns instead to a discussion of whether negligence per se can adopt the statutory standard of conduct.

### 1. MacDonald's Claim Requires a Common Law Duty

Although the New Hampshire Supreme Court stated in 1972 that "[i]t is well established law in [New Hampshire] that a causal violation of a statutory standard of conduct constitutes legal fault in the same manner as does the causal violation of a common-law standard of due care, that is, causal negligence," Moulton v. Groveton Papers Co., 112 N.H. 50, 52 (1972) (citations omitted), this generous formulation of private remedies in statutes seems not to have stood the test of time. Compare id., with Stillwater Condo. Ass'n v. Town of Salem, 140 N.H. 505, 506-07 (1995) (requiring an independent common law duty before

applying a statutory standard of conduct).  In _Stillwater_, the
New Hampshire Supreme Court stated that "[i]f no common law duty
exists, the plaintiff cannot maintain a negligence action, even
though the defendant has violated a statutory duty."  140 N.H. at
507 (quoting _Marquay_, 139 N.H. at 714).  But, if "a common law
duty does exist, and 'there is an applicable statute, the
defendant . . . will be held to the statutory standard of conduct
[only] if the plaintiff is in a class the legislature intended to
protect, and the harm is of a type the legislature intended to
prevent.'"  _Id._ (citing _Marquay_, 139 N.H. at 715; _Island Shores_
_Estates Condo. Ass'n_ v. _City of Concord_, 136 N.H. 300, 307
(1992)).

_Stillwater_ is the mountain over which MacDonald must climb
to continue with his cause of action.  The Court thus searches
for guidance in New Hampshire jurisprudence as to whether any
common law duty exists between a title insurer and an insured
party.  Although a cause of action identical to this case does
not appear to have been recorded in New Hampshire jurisprudence,
the court examined the duties of a title insurer's agent in
_Lawyers Title Ins. Corp._ v. _Groff_, 148 N.H. 333, 336-37 (2002).
In that case, the New Hampshire Supreme Court reversed the trial
court's conclusion that the defendant lawyer was vicariously
liable to the title insurer for a title abstractor's negligence.
_Id._ at 334-35.  Although both the Supreme Court and the Superior

Court discussed the agent's duties in a claim for negligence, these duties expressly arose from contract. Id. at 336 ("Under the agency agreement, the defendant had no duty to examine and clear title."); Lawyers Title Ins. Corp. v. Groff, No. 99-C-413, 2001 WL 34013568, at *2 (N.H. Sup. Ct. Feb. 22, 2001) (unpublished opinion), overruled by Lawyers Title Ins. Corp., 148 N.H. at 334 (2002). While it seems peculiar that these courts would find a tort claim for negligence arising out of the contract (while also accepting a breach of contract), neither court discussed whether the title insurer or agent might have a common law duty that parallels the contractual duty. See Lawyers Title Ins. Corp., 148 N.H. at 336-37; Lawyers Title Ins. Corp., 2001 WL 34013568, at *1-3.

Further confusing matters, in a recent case construing contract damages against a title insurer, the New Hampshire Supreme Court commented that "[t]itle insurance does not guarantee perfect title; instead, it pays damages, if any, caused by any defects to title that the title company should have discovered but did not." Gray v. Commonwealth Land Title Ins. Co., 162 N.H. 71, 76 (2011) (quoting Swanson v. Safeco Title Ins. Co., 186 Ariz. 637 641 (Ariz. Ct. App. 1995)). In Swanson, the Arizona Court of Appeals concluded that the measure of damages for damages caused by a clouded title was "the depreciation in market value caused by the existence of the title defect." 86

Ariz. at 641.  Interestingly, Arizona courts do recognize liability in tort for all proximate damages caused by a failure of a title insurer to abstract title.  Moore v. Title Ins. Co. of Minnesota, 148 Ariz. 408, 412 (Ariz. Ct. App. 1985) ("When a title insurance company fails to perform its duty to abstract title accurately, the title insurance company may be liable in tort for all damages proximately caused by such breach of duty." (quoting Heyd v. Chicago Title Ins. Co., 218 Neb. 296, 303 (1984))).

In Focus Investments Associates, Inc. v. American Title Insurance Co., 992 F.2d 1232 (1st Cir. 1993), the First Circuit decided as a matter of first impression whether Rhode Island law permitted a title insurance company be held liable for failure to search title and disclose title defects to the insured.  Id. at 1235.  The First Circuit observed that courts uniformly rejected holding title insurers liable for negligence in the absence of a express contract or preliminary title report - but at the time, Rhode Island did not have a comprehensive statute regulating title insurance.[4]  Id. at 1236 ("In the absence of a duty to search title, as a matter of law, there can be no liability for

---

[4] The Rhode Island legislature subsequently passed the Rhode Island Title Insurance Act of 2010, including new duties regarding title insurance reports and regulation of title insurer agents relationships with title insurers.  R.I. Gen. Laws Ann. §§ 27-2.6-12, 27-2.6-13.

failing to do so."). The First Circuit agreed with the Rhode
Island district court in Focus that the plaintiff was seeking to
"expand its relationship" with the title insurer beyond the title
insurance policy and "thereby impose upon [the title insurer] a
duty neither undertaken nor imposed by law." Id. At the same
time, the First Circuit implicitly declined to find a common law
duty of reasonable care by title insurers. See id. The court
defended this conclusion in a footnote, comparing liability for
title insurers as "tantamount to a buyer of life insurance
claiming that his policy is a guarantee against death." Id. at
1237 n.10 (analyzing the negligent misrepresentation claim).

More recently, the First Circuit acknowledged that title
insurance "differs significantly from other types of insurance."
Sheils Title Co., Inc. v. Commonwealth Land Title Ins. Co., 184
F.3d 10, 16 (1st Cir. 1999). In particular, title insurance
"insures failures to discover existing flaws or defects in title"
as opposed to future events causing loss. Id. This is a
"double-edged sword" for title insurers, as they can both
immunize themselves from claims by carefully checking the title,
but losses related to clouded title will be directly or
indirectly caused by the insurer. Id. In retrospect, the First
Circuit's dicta in Focus is imprecise - title insurance is
perhaps better compared to a physician who certifies that a
patient is healthy for certain physical activities, but only

12

realizes after the patient is injured that the critical exam or tests were negligently administered.[5]  Id. at 16-17 (citing trial testimony by a title insurer).  Given this analogy to negligent misrepresentation, title insurance is in theory more susceptible to a finding of a common law duty than other types of insurance.

In Marquay, the court explained that a common law duty may arise if the parties are in a special relationship.  Marquay, 139 N.H. at 716.  "The relation of the parties determines whether any duty to use due care is imposed by law upon one party for the benefit of another."  Id. (quoting Guitarini v. Company, 98 N.H.

---

[5] In Sheils Title Co., Inc., the First Circuit included trial testimony that makes this point rather well:

> A: Our business [of title insurance] is a little bit different.  More-most other kinds of insurance, the whole idea is they assume the risk.  In our business we try to eliminate the risk or to avoid the risk.
> Q: How is that possible?
> A: It is possible when you take a look at the historical record of a title and search the title properly and make sure that the liens on the property are discharged and do all of the research necessary and file all of the proper documents, you eliminate the risk involved in a title insurance policy.
> Q: How is that different [from] a life insurance company when it examines someone to issue a life insurance policy?
> A: People make comparisons with a doctor's examination. If you think about examining the title as you do about examining the person, the difference is if you examine the title and you do the job you are eliminating the possibility of anything bad happening.  You are eliminating the possibility of a claim.

184 F.3d at 16-17 (quoting Donald Weigel, president of northern operations for Commonwealth Land Title Ins., Co.).

118, 119 (1953)).  After looking to the Restatement (Second) of

Torts, the court in <u>Marquay</u> found that only some school district

employees have a special relationship with school children

imposing a duty to protect children from sexual abuse by another

school employee.  <u>Id.</u> at 716-17.

Without clear guidance from these courts, this Court will

also turn to the Restatement.  Section 552 of the Restatement

(Second) of Torts is most relevant.

> One who, in the course of his business, profession or
> employment, or in any other transaction in which he has
> a pecuniary interest, supplies false information for the
> guidance of others in their business transactions, is
> subject to liability for pecuniary loss caused to them by
> their justifiable reliance upon the information, if he
> fails to exercise reasonable care or competence in
> obtaining or communicating the information.

Restatement (Second) of Torts § 552(1).  This general principle

supports finding a common law duty, <u>see</u> <u>id.</u>, and New Hampshire

courts have accepted the principle therein, <u>Spherex, Inc.</u> v.

<u>Alexander Grant & Co.</u>, 122 N.H. 898, 904 (1982) ("We believe

Section 552 of the Restatement represents a reasoned approach to

the issue of professional liability for negligent

misrepresentation.").  <u>Accord</u> <u>Plourde Sand & Gravel</u> v. <u>JGI</u>

<u>Easter, Inc.</u>, 154 N.H. 791, 800 (2007) (restating the court's

acceptance of Section 552 as a guide for professional negligence

within the boundaries of "reasonable expectations as to whom the

information will reach") (citation omitted)); <u>Lay</u> v. <u>United</u>

<u>States</u>, No. 05-CV-131-PB, 2006 WL 38927 (D.N.H. Jan. 5, 2006)

("The New Hampshire Supreme Court has adopted the position of the Restatement (Second) of Torts in regard to a professional's liability for negligently supplying information to a third party."). The New Hampshire Supreme Court also applied Section 552 of the Restatement to misrepresentations by accountants. Demetracopoulos v. Wilson, 138 N.H. 371, 375 (1994). This duty of professional care exists in other states with regards to title abstractors. E.g., Heyd, 218 Neb. at 302-03 (1984) (collecting cases showing duty of title insurance companies to use due care) ("The duty imposed upon an abstractor of title is a rigorous one.").

Other states, perhaps a majority, have concluded that title insurers owe no duty to the insured. Courts in Colorado, Florida, Idaho, and New Jersey all specifically declined to read a private cause of action into their respective statutes. See Chicago Title Ins. Co. v. Commonwealth Forest Inv., Inc., 494 F. Supp. 2d 1332, 1338 (M.D. Fla. 2007) (concluding that a Florida statute does not provide for a statutory cause of action for deficient title search); Grot Cimarron, LLC v. Stewart Title Guar. Co., No. 03-CV-1823, 2004 WL 5150173 (Colo. Dist. Ct. June 17, 2004) (declining to find a duty, either through common law or statute, that would support a claim for negligence); Brown's Tie & Lumber Co. v. Chicago Title Co. of Idaho, 115 Idaho 56, 59 (1988) (rejecting a claim that the Idaho statute created a duty

in tort requiring title insurers to conduct a reasonable search and inspection of title); <u>Walker Rogge, Inc.</u> v. <u>Chelsea Title & Guar. Co.</u>, 116 N.J. 517, 535-41 (1989) (finding no duty under the New Jersey statute or common law).

In contrast, the New Mexico Supreme Court determined that a statute with language similar to the New Hampshire statute imposed a duty on title insurers. <u>Ruiz</u> v. <u>Garcia</u>, 115 N.M. 269, 272-74 (1993) (superceded by statute as noted in <u>Barrington Reinsurance Ltd., LLC</u> v. <u>Fidelity Nat'l Title Ins. Co.</u>, 143 N.M. 31, 33-34 (2007)). The New Mexico court, however, also concluded that there could be no cause of action for negligent misrepresentation under a title insurance policy. <u>Ruiz</u>, 115 N.M. at 274. "A title insurance contract only obligates the insurer to indemnify the insured for losses sustained when one of the risks insured against occurs. Thus, a title policy does not constitute a representation that the contingency insured against will not occur." <u>Id.</u> (citation omitted).

This Court respectfully disagrees. Title insurance undoubtedly functions as indemnity for "those unlucky few who suffer substantial losses covered by their policies." Charles Szypszak, <u>New Hampshire Practice Real Estate</u>, Ch. 7.01 Nature of Title Insurance 161. "In other respects, however, title insurance is fundamentally different from other forms of insurance, because it focuses on <u>risk prevention</u> rather than risk

assumption." Id. at 162; accord Sheils Title Co., Inc., 184 F.3d
at 16-17; cf. J. Jefferson Davies, Mastering Real Estate Titles
and Title Insurance in New Hampshire 30 (Nat. Bus. Inst. 2002)
("[Title Insurance] is distinguishable from all other types of
insurance in that it insures against PAST DEFECTS by ELIMINATING
or MINIMIZING RISKS."). The cost of title insurance largely pays
for title searches - not reimbursements to policy holders.
Charles Szypszak, New Hampshire Practice Real Estate, Ch. 7.01
Nature of Title Insurance 161. "Thus, title insurance provides a
property owner or lender with assurance that the description of
the rights being conveyed, which is based on the title search and
examination, is complete and accurate." Id. With an eye to the
practical realities of the real estate markets, this Court cannot
ignore that a critical component of title insurance is
representing to home owners that they are actually buying
property without a clouded title. Id. ("A proper understanding
of title insurance requires an appreciation of this role it plays
in preventing risks from being assumed in real estate
conveyances."). This Court therefore holds, in line with Section
552 of the Restatement, that a title insurer has a common law
duty to the insured, and MacDonald may bring his claim for
negligence against Old Republic.

    2.   The Statutory Standard of Conduct Applies to
         MacDonald's Negligence Claims

As discussed above, the New Hampshire statute provides a standard of conduct for title searches by title insurers. N.H. Rev. Stat. § 416-A:6 (requiring title insurers to conduct "a reasonable examination of the title" and retain evidence of the search for not less than twenty years). In keeping with New Hampshire precedent, this statutory conduct only applies in a negligence action where a common law duty exists, the plaintiff is in a class the legislature intended to protect, and the harm is of the type the legislature intended to prevent. E.g., Mahan v. N.H. Dept. of Admin. Servs., 141 N.H. 747, 754 (1997). The Title Insurance Code is a regulatory law and according to the terms of the statute, title insurance "means insuring, guaranteeing, or indemnifying owners of real property or others interested therein against loss or damage suffered by reason of liens, encumbrances upon, defects in, or the unmarketability of the title to said property." N.H. Rev. Stat. § 416-A:2. As MacDonald has an interest in property that was guaranteed, insured, or indemnified by a title insurer against loss or damage by reason of unmarketability, the statute protects him. See Mahan, 141 N.H. at 754 (looking to the statutory definitions to see what class of plaintiffs the legislature sought to protect). But see Gray, 162 N.H. at 76 (stating that title insurance does not guarantee against loss); Focus Inv. Assocs., Inc., 992 F.2d

at 1237 (applying Rhode Island law to state that "[t]itle insurance is a contract of indemnity, not guarantee").

Similarly, the harm here is clearly one that the legislature intended to prevent. Section 416-A:3 of the Title Insurance Code requires compliance by title insurers, and Section 416-A:6 elucidates how title insurers must act to prevent such harms - by making a reasonable examination of title. As mentioned before, Section 416-A:6 apparently was significant to the legislature, who amended the yet-to-be passed bill to extend by five years the time that title insurers or their agents must preserve evidence of their title search. N.H. Journal of the House, Session of 1971, Vol. 1, at 480. Therefore, MacDonald may apply the statutory standard of conduct to his action for negligent search of title.

### B. Economic Loss Doctrine

The Court must also consider whether the economic loss doctrine bars MacDonald's tort claims. The economic loss doctrine is a "judicially-created remedies principle that operates generally to preclude contracting parties from pursuing tort recovery for purely economic or commercial losses associated with the contract relationship." Plourde Sand & Gravel, 154 N.H. at 794 (quoting Tietsworth v. Harley-Davidson, Inc., 270 Wis.2d 146, 162 (2004)). The economic loss doctrine holds that contract law is better suited than tort law to deal with purely economic

loss cases.  Id.  "Thus, where a plaintiff may recover economic loss under a contract, generally a cause of action in tort for purely economic loss will not lie."  Id. (citation omitted).  The economic loss doctrine emerged at common law with the advent of products liability.[6]  Id.

When there is privity among the parties, the economic loss doctrine does not bar a tort claim based on a recognized independent duty of care.  Id. (citing Farmers Alliance Mut. Ins. Co. v. Naylor, 452 F. Supp. 2d 1167, 1174 (D.N.M. 2006)).  When a claim lies outside the contract terms, id., or is unrelated to the contract's performance, it is independent of the contract and thus is not barred by the economic loss doctrine.  See Wyle v. Lees, 162 N.H. 406, 411-12 (2011).  Here, MacDonald and Old Republic are in privity.

In Wyle, the court addressed whether the economic loss doctrine bars recovery for a negligent misrepresentation claim between contracting parties.  Id. at 410.  Until Wyle, the exception had been applied only in cases between parties not in privity.  Id.  In Wyle, the defendants negligently misrepresented that the premises they were selling to the plaintiff were

---

[6] In Plourde, the Supreme Court of New Hampshire applied the economic loss doctrine to a case between parties not in privity. 154 N.H. at 795.  In so doing, the court carved out two exceptions which, when applied to non-privity cases, would permit tort claims for economic loss.  Id.  The two exceptions are: (1) a special relationship, and (2) negligent misrepresentation.  Id.

licensed for immediate occupancy, and that all the necessary permits had been obtained. Id. at 412. The court ruled that the misrepresentations served as an inducement for the execution of the sales contract, and adopted the exception because the negligent misrepresentation claim was independent, affirmative, and unrelated to the performance of the contract. Id. The court noted that had the plaintiff's negligence claims been related to the performance of the terms of the contract, or a recharacterization of a breach of contract claim, they would have been barred by the economic loss doctrine. Id. Thus, because the negligence claim was independent and not duplicative of the breach of contract claim, the plaintiffs, despite being in privity with the defendants, were permitted to recover economic loss damages in tort. Id.

As MacDonald and Old Republic are in privity, the economic loss doctrine will not bar MacDonald's New Hampshire common law tort claims under the negligent misrepresentation exception. Although the First Circuit held in Focus that in Rhode Island, title insurers cannot be liable for negligent misrepresentation, this Court's analysis of New Hampshire law leads to a contrary conclusion. Cf. Focus, 992 F.2d at 1237

Finally, Old Republic argues that the factual allegations supporting MacDonald's negligence claim are virtually identical to those supporting his breach of contract claim. When this

occurs, an independent duty may not exist.  See Deutsche Bank
Nat'l Trust Co. v. Fadili, No. 09-cv-385-LM, 2011 WL 4703707
(D.N.H. Oct. 4, 2011) (holding that economic loss doctrine
applied where plaintiff failed to identify a duty outside the
terms of the contract).  In this case, MacDonald's breach of
contract claim is for payment of the amount of insurance under
the three title insurance polices issued by Old Republic's agent.
Compl. ¶¶ 130-135.  MacDonald has not alleged that a negligent
search of title was a breach of the contract.  See id.  In
contrast, the negligence claim, Count III, alleges common law
professional negligence by Old Republic's agent, the Law Firm.
Id. ¶ 145.  Like Wyle, the negligent misrepresentation claim is
independent of the breach of contract claim.  See Wyle, 162 N.H.
at 411-12.  Accordingly, this Court holds that the economic loss
doctrine does not bar MacDonald from bringing his negligence
claim.

## C.  Certification

This Court is mindful of the sovereignty of the New
Hampshire courts over New Hampshire law and the novelty of the
questions in this case.  Should this resolution of Count III
ultimately determine or affect MacDonald's recovery, this Court
will, prior to the entry of judgment, certify to the New
Hampshire Supreme Court the question whether New Hampshire law
imposes a common law duty on title insurers, pursuant to that

court's rule for Uniform Certification of Questions of Law.  N.H.
S. Ct. R. 34.

### III.  CONCLUSION

For the foregoing reasons, this Court DENIES Old Republic's
motion to dismiss Count III, ECF No. 7.  The Court has already
DENIED the motion to dismiss with respect to Counts II and IV.

**SO ORDERED.**


/s/ William G. Young
WILLIAM G. YOUNG
DISTRICT JUDGE